IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHERRY S.[1]

          Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

Civ. No. 3:23-cv-1304-CL

**OPINION AND ORDER**

---

MARK D. CLARKE, Magistrate Judge.

Plaintiff Sherry S. seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits. Full consent to magistrate jurisdiction was entered on September 7, 2023 (ECF No. 3). For the reasons provided below, the Commissioner's decision is AFFRIMED.

## BACKGROUND

On September 26, 2018, Plaintiff protectively filed an application for disability insurance benefits, alleging disability beginning on August 29, 2017. Tr. 203-04. The claim was denied initially and on reconsideration. Tr. 129-33, 135-37. Plaintiff requested a hearing before an administrative law judge and appeared before ALJ Richard Geib on November 10, 2020. Tr. 34-65. Plaintiff, represented by her attorney, and a vocational expert testified at the hearing. Tr. 34-65. The ALJ found Plaintiff not disabled in a written decision issued January 7, 2021. Tr. 10-33.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

The Appeals Council denied review on July 16, 2021, making the ALJ's decision the final agency decision. Tr. 1-6. Plaintiff timely appealed. Tr. 882-92.

On appeal, the District Court granted the parties' stipulated motion to remand for further proceedings to further develop the record, hold a de novo hearing, and issue a new decision. Tr. 894. On remand, the District Court instructed to ALJ to "reconsider the opinion of Beenish Khwaja, D.O., and as necessary, steps two and three, the claimant's statements, the medical opinion evidence, the residual functional capacity findings, and the claimant's ability to work at steps four and five." Tr. 894. In turn, the Appeals Council vacated the underlying decision and remanded the case for further proceedings. Tr. 900. The ALJ held a second hearing on May 18, 2023. Tr. 826-51. On July 6, 2023 the ALJ again issued a written decision finding Plaintiff not disabled during the relevant period. Tr. 819. Plaintiff did not file written exceptions to the ALJ's decision, making the ALJ's decision final for purposes of judicial review. Tr. 797-825.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such

work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a.    The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The

Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.

1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work

which exists in the national economy"). If the Commissioner fails to meet this burden, the

claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the

Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55;

*Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff engaged in substantial gainful activity continuously since August 29, 2017, the alleged onset date. Tr. 802.

2. Plaintiff has the following severe impairments: obesity, hypersomnia, fibromyalgia, left knee degenerative joint disease, cervical and lumbar spine disorders, and inflammatory arthritis. Tr. 805.

3. Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 807.

4. Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently climb ramps and stairs and never climb ladders, ropes, or scaffolds; she can frequently bend, stoop, kneel, crouch, and crawl and should avoid all exposure to work hazards such as unprotected heights and moving mechanical parts; can frequently handle and finger bilaterally; and can occasionally reach overhead bilaterally. Tr. 810.

5. Plaintiff was able to perform past relevant work as a benefits II clerk and as a hotel/motel clerk, as those jobs are generally performed in the national economy and

as those jobs were actually performed by the claimant. The claimant can also perform past relevant work as a data entry clerk as the job was actually performed by the claimant, not as the job is generally performed in the national economy. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. Tr. 817.

6.  The claimant was born on November 21, 1978 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Tr. 818.

7.  Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could have performed, such as route delivery clerk (DOT # 222.587-034, unskilled, SVP 2, light exertion), with 48,300 jobs nationally; collator operator (DOT # 208.685-010, unskilled, SVP 2, light exertion), with 39,800 jobs nationally; and merchandise marker (DOT # 208.587-034, unskilled, SVP 2, light exertion), with 130,900 jobs nationally. Tr. 819.

8.  Plaintiff was not under a disability, as defined in the Social Security Act, from August 29, 2017, through the date of the decision. Tr. 819.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ's step one finding complied with the regulations,

2. Whether the ALJ reasonably found Dr. Khwaja's opinion unpersuasive,

3. Whether substantial evidence supports the RFC, and

4. Whether the ALJ reasonably evaluated Plaintiff's allegations of fatigue.

For the following reasons, the Commissioner's decision is AFFIRMED.

## I.    Step One

Under Social Security regulations, a claimant is not disabled if she is able to engage in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1571. Even if a claimant's work does not rise to the level of SGA, it may show that the claimant is able to do "more work than [she] actually did." 20 C.F.R. § 404.1571. To determine whether a claimant engaged in SGA, an ALJ will generally assess the claimants' earnings. 20 C.F.R. § 404.1574. Earnings, however, are not dispositive. *See* 20 C.F.R. § 404.1574(a)(1); *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001) ("Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity."). When earnings are below the agency's established threshold, the Commissioner may point to substantial evidence, aside from earnings, that the work was SGA. *Lewis*, 236 at 503. Relevant factors include the nature of the work, how well Plaintiff does the work, and the amount of time spent at work. 20 C.F.R. §§ 404.1574(a)(1), (b)(3)(ii); *see also Parks v. Comm'r of Soc. Sec.*, 2014 WL 1653202, at *4 (D. Or. Apr. 23, 2014).

The ALJ found that Plaintiff engaged in SGA or had the ability to engage in SGA during the relevant period. Tr. 803-05. The ALJ first discussed Plaintiff's earnings and noted they were only marginally below the agency's established threshold between 2017-22, the relevant period. Tr. 803. Because Plaintiff's earnings were below the presumptively-SGA level, albeit barely, the ALJ then considered what other evidence, aside from earnings, would have shown whether Plaintiff's work qualified as SGA. Tr. 803-05 03-05; *see also* 20 C.F.R. § 404.1571, ("Even if

the work you have done was not substantial gainful activity, it may show that you are able to do more work that you actually did."). In considering whether a claimant can perform substantial gainful activity an ALJ considers five factors: the nature of the claimant's work, how well the claimant does the work, if the work is done under special conditions, if the claimant is self-employed, and the amount of time the claimant spends at work. *Id.*

The ALJ cited several aspects of the medical record that showed that Plaintiff's prior work either qualified as SGA, or that Plaintiff was able to do more work than she did during the relevant period. For example, the ALJ discussed that, despite Plaintiff's allegations of trouble staying awake, she was "consistently able" to work three days consecutively—Sunday afternoons, Mondays, and Tuesdays. Tr. 804. And, her earnings were over SGA levels for several quarters in the relevant period. Tr. 804. The ALJ considered that Plaintiff could take breaks, had flexible hours, and that Plaintiff started her current role "less than a year" before her alleged onset date yet was able to maintain her performance "during periods of flare-ups" and without taking "excessive sick leave." Tr. 804. The ALJ also noted that Plaintiff was employed by the same company for "over eight years," suggesting her employer was satisfied with her work. Tr. 804. The ALJ elaborated that there "is no evidence in the claimant's medical records to suggest that she could not manage an additional 1.5 hours of work per week, and thus cause her earnings to exceed the presumptive SGA amount." Tr. 804. Based on all of these factors, which were appropriate considerations under 20 C.F.R. § 404.1574(b)(3)(ii), the ALJ reasonably concluded that Plaintiff engaged in SGA or had the ability to engage in SGA continuously since her alleged onset date. Tr. 805.[2]

---

[2] Although the Court finds this was not error, any error the ALJ committed at step one was harmless because he proceeded to the next step of the sequential evaluation anyway. *See Randy M. v. Comm'r of Soc. Sec.*, 6:20-cv-01529-JR, 2021 WL 3913567, at *8 (D. Or. Sept. 1, 2021) ("When an ALJ proceeds to the next step of the

Plaintiff argues the ALJ's step one finding was purely subjective and leaves this Court with no way to judge the ALJ's prognostication that she could do 1.5 more hours of work per week. Pl. Br. at 7. To the contrary, the ALJ does the step one analysis in line with applicable regulations and points to several concrete data points in the record that give this Court a basis to review the decision. 20 C.F.R. § 404.1571. The ALJ's discussion of how Plaintiff spends her time at work, her ability to retain the same position over eight years, and her schedule all support the ALJ's decision that Plaintiff had either engaged in SGA since August 29, 2017, or could have. Tr. 802-04. Although Plaintiff reads the record differently, the Court finds the ALJ supported the decision with substantial evidence, and affirms on this basis.

## II.    Medical Opinion Evidence

Plaintiff argues the ALJ also erred in rejecting the opinion of Dr. Beenish Khwaja, D.O., Plaintiff' sleep doctor. Pl. Br. at 13-20. Specifically, Plaintiff argues that the ALJ improperly fixated on Dr. Khwaja's November 9, 2020 letter describing hypersomnia generally, and failed to provide sufficient record evidence to discount her opinion about Plaintiff's inability to work. Pl. Br. at 8-14.

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3)

---

sequential evaluation process, any error at that step is harmless in the ALJ's ultimate nondisability finding. Plaintiff's step-one arguments therefore do not establish harmful error.").

relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and

consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at \*6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

Plaintiff's sleep doctor, Beenish Khwaja, D.O., completed a questionnaire in November 2020 in which she indicated that Plaintiff's attention and concentration would be impaired due to her symptoms 20% of the workday; she would miss 16 hours (the equivalent of 2 workdays) or more a month from even a simple and sedentary job; she could lift up to 8 pounds, stand/walk for 4 hours in a workday; and sit for 4 hours in a workday. Tr. 786-87. She additionally opined that the rest of Plaintiff's day would be spent napping or resting. Tr. 787.

The ALJ rejected Dr. Khwaja's opinion as unpersuasive. Tr. 815-16. The ALJ reasoned that Dr. Khwaja's opinion and extreme limitations were not supported by the record, or by her own treatment notes. *Id.* The ALJ further found Dr. Khwaja's opinion inconsistent with the medical record and other medical opinions he found persuasive. *Id.*

Regarding "supportability," the ALJ adequately discussed the strength of the evidence underlying Dr. Khwaja's opinions when finding them unpersuasive. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ reasonably determined that several of Dr. Khwaja's opinions conflicted with her own treatment notes. For

example, Dr. Khwaja's records did not support the opinion that Plaintiff had "sleep attacks" that would cause her to miss two workdays a month; the ALJ noted that the diagnosis of "sleep attacks" appears nowhere in the record apart from Dr. Kwaja's capacity statement. Tr. 815. To the contrary, Dr. Khwaja's notes showed that Plaintiff required her sleep medications only two or three days per week, and her medications allowed her to "hold down" her job and "be alert" while she worked. Tr. 771. Plaintiff's medical record likewise showed "good clinical benefit" from medication as well as Plaintiff's ability to work part-time, further undermining any support Dr. Khwaja's opinions might have from the record. Tr. 815 (citing Tr. 771). The ALJ adequately considered the supportability of Dr. Khwaja's opinions and reasonably cited the lack of support those opinions had in the record when finding them unpersuasive.

The ALJ also adequately addressed the consistency of Dr. Khwaja's opinions. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ found Dr. Khwaja's opinion conflicted with other persuasive medical opinions in the record, and evidence from Plaintiff's own testimony. For example, The ALJ pointed to Plaintiff's testimony that she did not nap every day. Tr. 815. In fact, the record showed she napped only on days "when she really needs to." Tr. 814 (citing Tr. 529, 1252). Many days she denied taking any naps. *See, e.g.,* Tr. 523, 529, 604, 674, 762, 772, 781, 1252, 1260, 1268. Moreover, Plaintiff's testimony and work history confirmed she would not miss 2 or more workdays a month as Dr. Khwaja opined. As the ALJ discussed earlier in the decision, Plaintiff was able to consistently work as her job required. Tr. 804; *see also* Tr. 836-40 (Plaintiff testifying she missed only two days of work "this year"). The ALJ also explained that Dr. Khwaja's opinion was inconsistent with the prior administrative medical findings. Tr. 816. In a past administrative exam, Dr. Susan

Moner considered Plaintiff's sleep disorder and allegations of hypersomnia, but found Plaintiff

was nonetheless able to perform at least simple tasks, stand/walk for at least 6-8 hours during a

work day, and lift up to 20 pounds occasionally. Tr. 96-104. Dr. Moner further noted that

Plaintiff was routinely alert and oriented. Tr. 99-100. Ultimately, the Court finds that the ALJ

sufficiently addressed the consistency and supportability factors, and supported the decision to

discount Dr. Khwaja's opinions with substantial evidence.

Plaintiff points to other evidence in the record that she believes supports Dr. Khwaja's

opinion, and attempts to discredit the ALJ's opinion because it reached the same conclusions it

had in the previous, reversed decision. Pl. Br. at 8-14. But the "key question is not whether there

is substantial evidence that could support a finding of disability, but whether there is substantial

evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson*

*v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). Contrary to Plaintiff's assertions (see Pl.'s Br. at

9-11), the ALJ did not "misconstrue" the doctor's opinion when he accurately quoted the

doctor's statement that Plaintiff "may" have certain symptoms related to hypersomnia (Tr. 815

citing Tr. 784). And the ALJ pointed to substantial evidence that showed that, despite her

symptoms, Plaintiff was able to consistently work, she was routinely found to be active, alert,

and oriented, and her medication helped with sleep-related issues. *See, e.g.*, Tr. 516, 520, 533,

566, 771, 1085, 1090, 1096, 1112, 1253, 1261. Because the ALJ identified substantial evidence

in support of his findings, this Court will not disturb the ALJ's evaluation of Dr. Khwaja's

opinion.

## III.    Subjective Symptom Testimony

Plaintiff also argues that the ALJ erred in rejecting her symptom testimony. Pl. Br., ECF

No. 10 at 18-21. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017

WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective

symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other

grounds). First, the ALJ determines whether there is "objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such

evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and

convincing reasons in order to reject the claimant's testimony about the severity of the

symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient."

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834

(9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a

claimant's testimony by simply reciting the medical evidence in support of his or her residual

functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and

must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195

(9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons

proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ

did not arbitrarily discount the claimant's testimony.").

Plaintiff argues the ALJ erred by discounting several aspects of her testimony about

fatigue. At the hearing, Plaintiff shared that she has been able to keep working on an

accommodated basis in that her employer has allowed her to have three extra breaks during the

workday in addition to the usual breaks. Tr. 47. She also described how her employer

accommodated her being absent from work three days a month. Tr. at 46. Plaintiff shared that

her hypersomnia causes her to feel extremely fatigued during the day. Tr. 49-50.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be

expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 811.

However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and

limiting effects of her symptoms were not entirely consistent with the medical evidence and

other evidence in the record. Tr. 811. Specifically, the ALJ found Plaintiff's symptom allegations

were inconsistent with objective medical evidence and her history of conservative treatment, and

that Plaintiff's daily activities conflicted with her symptom allegations. Tr. 811-13.

### A. Inconsistent Medical Record Evidence

The ALJ is instructed to consider all relevant evidence, including medical evidence, a

Plaintiff submits when evaluating subjective symptom allegations. 20 C.F.R. § 416.929(c)(2-3).

When an ALJ finds such evidence is "*inconsistent* with the claimant's subjective testimony, the

ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498

(9th Cir. 2022) (emphasis in original); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.

2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight

fluctuation was inconsistent with the medical record).

The ALJ reasonably discounted Plaintiff's allegations about the severity of her sleepiness

and fatigue as inconsistent with the record. Inconsistency between record evidence and a

Plaintiff's testimony is a sufficient basis for discounting subjective symptom allegations. *Smartt*,

53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(3). At the hearing, Plaintiff testified that her fatigue-

related symptoms were the primary reason she was unable to work. Tr. 45-50. She described how

she needed three extra breaks a day, and constantly felt fatigued. Tr. 46, 49-50. The ALJ

reasonably contrasted this testimony with Plaintiff's other testimony that she consistently worked a 20-hour per week job. *See, e.g.*, Tr. 811, 813-14. This is a sufficient basis on its own to discount Plaintiff's testimony. *See Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (Plaintiff's work history provided substantial evidence to support the ALJ's findings where Plaintiff testified that he had impairments for much of his life yet he was gainfully employed for a period). The ALJ further discussed that Plaintiff reported napping after work or on days off for 1-2 hours. Tr. 813, 814 (citing, e.g., Tr. 771, 1253, 1267). Elsewhere in the record, as the ALJ noted, Plaintiff stated she napped only on days "when she really needs to," or not at all. Tr. 814, 523, 529. The medical record additionally showed Plaintiff was generally active, alert, and oriented, further undermining her testimony about how her fatigue or sleepiness affected her ability to work. *See, e.g.,* Tr. 399, 516, 520, 533, 537, 566, 569, 573, 588, 592, 597, 624, 782, 1085, 1090, 1096, 1112, 1225, 1253, 1261. Ultimately, the ALJ supported the decision to discount Plaintiff's testimony about the extent of her sleepiness and fatigue with substantial objective medical evidence tending to show her symptoms were not as severe as alleged.

### B. Conservative Treatment

A claimant's conservative course of treatment for an allegedly disabling condition can also undercut subjective testimony regarding the severity of the limitations that impairment causes. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not as all-disabling as the claimant reported. *Tommasetti*, 533 F.3d at 1039. The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative

treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle*, 533 F.3d at 1162.

The ALJ reasonably concluded that Plaintiff's conservative course of treatment for her fatigue further undermined her hearing testimony. An ALJ may reject a claimant's allegations if the frequency or extent of treatment is inconsistent with the severity of symptoms alleged. Social Security Ruling (SSR) 16-3p, *available at* 2017 WL 5180304; 20 C.F.R. § 404.1529(c)(3)(iv)-(v); *see also Smartt*, 53 F.4th at 500. The ALJ reasonably relied on the fact that Plaintiff treated her fatigue with medication, which she required only two or three days per week and which improved her symptoms at times. Tr. 813; *see also, e.g.,* Tr. 771. *See Warre v. Comm'r of Soc. Sec.,* 439 F.3d 1001, 1006 (9th Cir. 2005) ("Impairments that can be controlled effectively with medication are not disabling"). The ALJ's citation to the medication regimen Plaintiff used to manage her hypersomnia was sufficient to discount her allegations about the severity of her hypersomnia symptoms, especially when the evidence the ALJ cited from the record showed the medication working, and Plaintiff regularly requested refills. *See, e.g.,* Tr. 397, 398, 781. This is another clear and convincing reason, supported by substantial evidence to discount plaintiff's symptom testimony.

### C. Daily Activities

The ALJ also discounted Plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 811. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective

symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has

even found such routine activities as playing video games, using public transportation, and

preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988

F.3d 1111, 1117 (9th Cir. 2021).

  The ALJ reasonably concluded that Plaintiff's ability to perform a normal level of daily

activity and interaction conflicted with her testimony about the severity of her alleged daytime

fatigue. To discount a Plaintiff's testimony, an ALJ must cite daily activities that "meet the

threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at

639. The ALJ contrasted Plaintiff's testimony about the need for rest breaks or naps (Tr. 45-50)

with records showing that she "enjoys walking" and she "uses a treadmill in her home." The ALJ

also explained that Plaintiff's "engagement in SGA level or near-SGA level work (completed in

just 2.5 days of work per week) for the same employer since 2016 suggests that she retains more

work capacity than she states." Tr. 813-14. Moreover, as the ALJ also considered, Plaintiff

cooked at least one meal a day from scratch, which a reasonable person could find incompatible

with her allegations of disabling sleepiness and fatigue. Tr. 814. This was another clear and

convincing reason for the ALJ to rely upon to discount Plaintiff's testimony about the severity of

her sleepiness and fatigue.

## IV. RFC

  Plaintiff further argues the ALJ erred by failing to include relevant limitations related to

her sleepiness and fatigue in the RFC. The RFC is the most a person can do, despite the person's

physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the

ALJ must consider all medically determinable impairments, including those that are not

"severe," and evaluate "all of the relevant medical and other evidence," including the claimant's

testimony. *Id.*; SSR 96-8p, available at 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

In formulating Plaintiff's RFC, the ALJ reasonably relied on persuasive medical opinions and the overall record to determine the most Plaintiff could do, despite her hypersomnia. An ALJ need only include limitations in the RFC that are supported by the record, and it is the ALJ's obligation to resolve any conflicts in the record when distilling the RFC. *See, e.g., Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). Here, the ALJ formulated an RFC that was well-supported by the record, and sufficiently resolved any conflicts. The ALJ considered Plaintiff's part-time work schedule and her ability "to work one half-day followed immediately by two full days in a row" as evidence of her ability to "stay awake and maintain a work schedule without excessive breaks." *Id.* The ALJ also noted Plaintiff's testimony that she took breaks at work and was "able to work flexible hours," but reasonably determined that was "consistent with the type of work being done." Tr. 803-04. The record also showed she was generally active, alert, and oriented. *See, e.g.,* Tr. 399, 516. Plaintiff's treatment notes likewise showed that Plaintiff's medications helped and "allow[ed] her to hold down a job and be alert during work." Tr. 771. Persuasive medical opinions further identified that, despite her sleep disorder, Plaintiff could still perform a range of light work with environmental and postural limitations. Tr. 96-104. Ultimately, the ALJ reasonably adopted state agency doctors' opinions and other relevant medical evidence to support the RFC.

For her part, Plaintiff contends she was unable to work due to excessive breaks and missed time from work due to her sleepiness and asserts that the RFC does not account for her

sleepiness and fatigue. Pl.'s Br. at 15-19. She further speculates she was at risk for falling or

dropping items when she experienced sleepiness or fatigue. Pl.'s Br. at 17. Yet, despite her

burden of proof, Plaintiff fails to cite any treatment notes or other medical evidence supporting

such limitations (except for Dr. Khwaja's opinion, which the ALJ reasonably discounted). Pl.'s

Br. at 15-18. In an effort to undermine the ALJ's RFC formulation Plaintiff also recapitulates

arguments about her symptom testimony and the persuasiveness of Dr. Khwaja's opinions.

Because the Court finds the ALJ supported the decision to discount Plaintiff's testimony and Dr.

Khwaja's opinions with substantial evidence, it was reasonable for the ALJ to omit limitations

expressed in those aspects of the record from the RFC. *See Bayliss*, 427 F.3d at 1217. The Court

will not overturn the ALJ's opinion on this basis either.

## ORDER

For the reasons set forth above, the decision of the Commissioner is AFFIRMED.

It is so ORDERED and DATED this _3_ day of September, 2024.

MARK D. CLARKE
United States Magistrate Judge